LOBRANO, Judge.
The sole issue in this case is whether there is sufficient evidence to support the Racing Commission’s decision to uphold the six month suspension of jockey Curt Bo-urque for failing to follow the orders of the State Steward. .The trial court reversed *243 the Commission’s decision and this appeal followed.
The facts are basically uncontested. The scenario is really a case of lack of communications on the part of the steward and Bourque. We affirm the trial court.
On May 20, 1991 State Steward Charles LeBlanc contacted James Stelly, the chemist at Evangeline Downs, to be present at the track by seven-thirty the next morning to conduct a special urine test of jockey Bourque. On the morning of May 21st Stelly met LeBlanc between 7:00 and 7:30 at the guard shack at the main gate. Shortly thereafter, between 7:30 and 8:00 a.m. Bourque arrived at the track. Le-Blanc testified that he and Stelly bent down so as to avoid detection by Bourque. Security guard Veneable was checking in other vehicles and waved Bourque through. LeBlanc then advised Veneable to have security bring Bourque to the commission’s office. Veneable radioed Officer Champagne who was on the backside of the track with those instructions. Shortly thereafter, Champagne came to the main gate, parked his four wheeler and advised that he did not see Bourque. While still at the main gate LeBlanc and Stelly saw Bo-urque approaching in his pick-up truck. LeBlanc stepped into the road way, motioned with his hand for Bourque to stop, and when he did, went to the driver’s side of the truck and told Bourque he wanted to see him in the office. He did not give Bourque a reason. Bourque responded that he could not because he had to go some place. He did not give LeBlanc a reason. LeBlanc responded that he needed to see him now. At that point Bourque started to drive off. LeBlanc testified he grabbed the steering wheel of the truck and “ran along side” for about thirty five feet before letting go. Bourque drove off.
Bourque testified that when he arrived at the track he went to the “backside” area and there met a friend, Alvin Trahan. Tra-han had called Bourque’s home earlier looking for Bourque when Mrs. Bourque told Trahan that Bourque should come home so they could take their child to the doctor as she appeared ill.[1] Bourque then immediately proceeded to return home. Upon arriving at the gate his testimony basically corroborates LeBlanc’s with the exception that Bourque does not remember “dragging” LeBlanc alongside the truck. He testified that he was totally unaware that LeBlanc was running with his truck. Bo-urque did not explain to LeBlanc his reason for leaving the track.
Included in the record is a letter from Dr. John E. Daigre, M.D. which states that the Bourque child was examined by him on May 21, 1991 and that he found nothing unusual. The doctor explained that the child, approximately three weeks old at the time, had developed complications at birth and that the Bourques were advised to call him if they noticed any unusual conditions.
Sergeant Chabaud testified that on follow-up investigation he contacted Dr. Daigre’s office and was advised that the Bourques had a prescheduled 10:45 a.m. appointment for May 21st. He did not determine when they actually arrived.
Predicated on the above facts the stewards suspended Bourque for a six month period. The Racing Commission affirmed that decision concluding that the stewards acted within their authority under LAC 35:2111 and that Bourque violated R.S. 4:152 A(6) in that he willfully disobeyed a lawful order of a racing official. The trial court reversed this decision, but gave no reasons.
Racing stewards exercise the powers of supervision and control at each licensed race track. LAC 35:2111. They act on behalf of the racing commission and are often referred to as horse racing’s “policemen”. Sider v. Louisiana State Racing Commission, 451 So.2d 1265 (La.App. 4th Cir.1984). As such, their authority extends to all persons, licensed or unlicensed, on association grounds during a race meeting. LAC 35:2111(A). Thus state steward Alvin LeBlanc had the legal right to require Bo-urque to submit to the special urine test. *244 The crux of the matter, however, is whether the evidence substantiates that Le-Blanc’s request for Bourque to “come to the office” was conveyed to Bourque as an official exercise of LeBlanc’s authority as a steward.
As we previously noted there was a total lack of communications between the participants. Neither gave the other a reason for his actions. Candidly, our review leads us to believe neither party acted in good faith with the other. We fail to understand why LeBlanc could not have stopped Bourque as he entered the track. Instead, LeBlanc and Stelly hid so that Bourque would not see them. We also fail to understand why Bourque did not tell LeBlanc his child was sick, or why he did not have his wife testify as to the circumstances of their visit to Dr. Daigre’s office. And finally, why didn’t Sgt. Chabaud simply ask what time the Bourque’s actually arrived at the office.
LeBlanc’s “order” to Bourque to come to the office should have been more specific. If a policeman, for no reason, were to stop someone and merely say “come with me” we doubt seriously if failure to do so would constitute resisting arrest. La. R.S. 4:152 states “willful disobedience ... of a lawful order.” In our opinion LeBlanc’s request, without a reason, cannot be construed as a lawful order within the meaning of the statute. Along with a steward’s authority comes the responsibility of exercising that authority reasonably. It is unreasonable for a steward to merely say “come with me” without more specificity, and refusal to do so cannot be considered the willful disobedience of a lawful order.
Accordingly, we affirm the trial court.
AFFIRMED.

. Trahan did not testify. However, his affidavit was submitted at the steward's hearing and introduced into the record at the Commission’s hearing.